UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

───────────────

№ 04-CV-2394 (JFB)

───────────────

RALPH RIVERA,

Petitioner,

VERSUS

BRIAN FISCHER,
SUPERINTENDENT,
SING SING C.F.

Respondent.

───────────────

MEMORANDUM AND ORDER
April 25, 2006

───────────────

JOSEPH F. BIANCO, District Judge:

Ralph Rivera petitions this Court for a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254, to vacate his state conviction. Petitioner alleges the following: (1) his equal protection rights were violated by the prosecutor's use of peremptory challenges against minorities; (2) petitioner's rights to effective assistance of counsel, due process and a fair trial were violated by the alleged improper admission of evidence of an out-of-court identification; and (3) the trial court's pre-trial *Sandoval* ruling failed to define the limits of permissible cross-examination into facts of prior convictions and, thus, petitioner was deprived of the ability to make an informed choice about taking the stand at trial.

For the foregoing reasons, the petition is denied.

I. BACKGROUND

A. The Underlying Facts

The following facts are adduced from the trial record.

On December 19, 1999, at approximately 6:00 a.m., petitioner and Tyrone Dingle entered the office of the Bergen Car Service. (Trial Transcript (hereinafter "TT") at 197.) Petitioner and Dingle requested a car, but were told by the dispatcher, Mohammad Hamden, that a car would not be available for another hour. (*Id.*) While the two men were in the office, a driver walked into the office to

return his radio and go off duty. (*Id.* at 198.) When asked why that driver could not drive them, Hamdan informed the two men that the driver had worked all night, was tired, and was going off duty. (*Id.*) Petitioner and Dingle cursed and grabbed the radio from Hamden. (*Id.*) One of the men punched Hamdan in the shoulder while the other said, "Give me your money, [expletive]." (*Id.*) Petitioner then approached Hamdan and cut his hand and his face with a box cutter. (*Id.* at 198, 207-08.) Petitioner and Dingle fled the office and ran into the Bergen Street G-train station across the street. (*Id.* at 206, 321.) The two men were apprehended several minutes later, one stop away from the Bergen Street station on the northbound G-train line at the Hoyt-Schermerhorn train station. (*Id.* at 321-26.) Hamdan was treated and released from the hospital the same day; his wound required over fifty stitches. (*Id.* at 209.) Upon his release, Hamdan was taken to the 84th Precinct where he identified both petitioner and Dingle in separate lineups. (*Id.* at 211-14.)

### B. Pre-Trial and Trial Procedures

Petitioner was charged with Assault in the Second Degree (N.Y. PENAL LAW § 120.05[2]), Assault in the Third Degree (N.Y. PENAL LAW § 120[1]), Menacing in the Second Degree (N.Y. PENAL LAW § 120.14[1]), and Criminal Posession of a Weapon in the Fourth Degree (N.Y. PENAL LAW § 265.01[2]). Co-defendant Dingle pled guilty and petitioner proceeded to trial by jury.

At a pre-trial *Sandoval* hearing,[1] the prosecutor requested permission to elicit on cross-examination if the defendant took the stand, among other things, the fact that petitioner was convicted of three felonies and their underlying facts. (TT at 18-21.) One of these prior felonies involved a plea to Criminal Sale of a Controlled Substance in the Third Degree, another involved a plea to Assault in the Second Degree, and a third involved a plea to Attempted Robbery in the Second Degree. Defense counsel did not address the drug conviction, but instead argued that the underlying acts of the other two felonies should be precluded because they were too similar to the incident for which petitioner was on trial and that, therefore, the prejudice to petitioner would be outweighed by the probative value of the information. (TT at 21-22.)

The court excluded the "events giving rise to the youthful offender adjudications." However, the court permitted the prosecutor to elicit the fact that petitioner had three felony convictions and allowed "a limited inquiry concerning the underlying facts as to each." (TT at 23.)

When trial counsel for petitioner inquired what was meant by a "limited inquiry," the court explained:

> A limited inquiry is an inquiry concerning the underlying facts which will be sufficient to elicit a quick description of the underlying facts unless, of course, there is fencing or

---

[1] A *Sandoval* hearing is an evidentiary hearing that is held by the trial court to determine whether, if the defendant decides to testify, a prior conviction may be used to impeach his credibility. *See People v. Sandoval*, 34 N.Y.2d 371, 374 (1974).

2

evasiveness, or something along that line, which would necessarily lead to a longer inquiry concerning the underlying facts than would be if there were no quarrel concerning the events giving rise to the charges.

(TT at 23.) Counsel informed the court that "[he] still do[es]n't know what quick means" and that he had an obligation to "inform [his] client." (*Id.* at 23-24.) The court further responded:

> I just got through saying that is a short inquiry [sic] the underlying facts. And the determination as to how short it must be, how short it ought to be, must abide the event and the weight whether [sic] or not this is a problem that develops should the defendant desire to testify. I guess to be safe, maybe the thing to do is proceed on the assumption it's going to be a long inquiry concerning the underlying facts.

(*Id.* at 24.) Counsel made no more objections to the court's ruling.

At trial, the victim was unable to make an in-court identification of petitioner. (*Id.* at 200-01.) The victim testified as to the two lineups he was shown the day of the incident. (*Id.* at 212-14.) He stated that he looked at each lineup for a "few seconds" before recognizing the perpetrators. (*Id.* at 213, 214.) The victim was asked if "there was any doubt in [his] mind when [he] viewed that . . . lineup and identified . . . the individual who cut [him]," and the victim responded, "I never forget his face." (*Id.* at 215.) There was various testimony from other witnesses that petitioner's appearance changed from the day the lineup was conducted. (*Id.* at 294-95, 327, 379-80.) There was also testimony from an officer identifying the petitioner in the courtroom as the subject of the lineup conducted. (*Id.* at 379.)

After the close of the State's case, the court asked petitioner if he "consulted with counsel as to whether or not it would be a good idea for [him] to testify." (*Id.* at 404.) Petitioner responded, "Yes." (*Id.*) The court also instructed petitioner that he was "entitled . . . to the advice of counsel in that regard. But insofar as whether or not [to] testify as a witness . . . that ultimately [was petitioner's] decision and nobody else's." (*Id.*) Petitioner responded that he understood, and confirmed that it was his decision not to testify. (*Id.* at 404-05.)

Petitioner was convicted of Assault in the Second Degree (N.Y. PENAL LAW § 120.05[2]) and sentenced as a persistent violent felony offender to a term of imprisonment of twenty years to life.

C. State Appeals and Post Judgment Motions

On February 18, 2003, petitioner appealed his conviction to the Appellate Division, Second Department, raising one claim – that the court's *Sandoval* ruling, which did not define the limits of permissible cross-examination into the facts of prior convictions despite defense counsel's requests for further specificity, deprived petitioner of any ability to make an informed choice about taking the stand, and thus denied him his right to due process and a fair trial. (*See* Opp. Ex. C, Replacement Brief for Defendant-Appellant.)

On April 24, 2003, petitioner filed a *pro se* supplement brief in which he raised several additional claims. Specifically, petitioner argued that his right to a fair trial and effective assistance of counsel was violated

3

when the trial court allowed testimony about the victim's out-of-court identification and defense counsel elicited evidence of the out-of-court identification, despite the victim's failure to make an in-court identification. Petitioner also raised a *Batson* claim, alleging that the State had improperly stricken six African-American jurors and one Asian juror and argued that the trial court improperly revisited the evidence of a *prima facie* case when it should have been assessing credibility. (*See* Opposition Ex. D, Appellant's *Pro Se* Supplemental Brief.)

On May 30, 2003, after the State filed a brief in response to petitioner's supplemental brief, Rivera filed a *pro se* supplemental reply brief. (*See* Opp. Ex. F, Appellant's *Pro Se* Supplemental Reply Brief.)

On September 29, 2003, the Appellate Division, Second Department, affirmed petitioner's judgment of conviction, holding that petitioner was "properly apprised . . . of the extent of cross-examination into his prior convictions that would be permitted in the event he chose to testify," that "[c]onsidering the passage of time since the assault, as well as changed in the defendant's appearance, the Supreme Court properly admitted the testimony relating to the complainant's identification of [petitioner] at a lineup conducted the same day as the assault," and the court's "determination that the prosecutor provided credible race-neutral and non-pretextual explanations for the exercise of peremptory strikes against potential jurors based, in part, upon their physical demeanor [was] supported by the record." *People v. Rivera*, 308 A.D.2d 602 (2d Dep't 2003). The court further held that petitioner's additional contentions, including those raised in his *pro se* supplemental brief, were without merit. *Id.*

By letter dated October 7, 2003, petitioner's counsel sought leave to appeal to the New York Court of Appeals. The State opposed by letter dated October 21, 2003. By letter dated October 23, 2003, petitioner's counsel forwarded a *pro se* letter in support of his application for leave to appeal. Leave to appeal was denied by the Court of Appeals by Certificate dated December 3, 2003. *People v. Rivera*, 1 N.Y.3d 579 (2003).

### D. The Instant Action

On May 12, 2004, petitioner filed a *pro se* petition with this Court for writ of *habeas corpus*, raising the three claims that were submitted to the state courts and described above. Petitioner made a concurrent motion for leave to proceed *in forma pauperis* and for appointment of counsel. The motion to proceed *in forma pauperis* was granted on July 6, 2004. The request for counsel was denied by Order dated December 17, 2004.

An opposition was filed on July 29, 2004, and Rivera's *pro se* reply was filed on March 30, 2005.[2]

## II. DISCUSSION

### A. The Standard of Review

To determine whether a petitioner is entitled to a grant of a writ of *habeas corpus*, a federal court must apply the standards of review provided in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No 104-132, 110 Stat. 1214, which provides, in relevant part:

---

[2] On March 23, 2006, this case was re-assigned from Judge Garaufis to the undersigned.

4

(d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review– "a federal *habeas* court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, *habeas* relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

B. *Batson* Claim

Petitioner claims that his "equal protection rights were violated by the prosecutor's use of peremptory challenges against minorities." (Petition at 7.) More specifically, petitioner claims that the prosecutor's explanation that her use of a peremptory challenge of an Asian woman "had nothing to do with race" was not a proper non-discriminatory reason. (*Id.*) Petitioner also claims that the court erred in finding "innocuous gestures" a non-pretextual, race-neutral reason for the use of peremptory challenges of six jurors. (*Id.*) Finally, petitioner contends that the court erred when it engaged in a "*prima facie* case analysis when it should have been determining the credibility of the prosecutor's race-neutral explanation." (*Id.*)

The Appellate Division*,* Second Department, did not unreasonably apply federal law, nor did it reach a conclusion opposite to that reached by the Supreme Court on a question of law. The Appellate Division held, "The Supreme Court's determination

5

that the prosecutor provided credible race-neutral and non-pretextual explanations for the exercise of peremptory strikes against potential jurors based, in part, on their physical demeanor is supported by the record and is entitled to great deference." *Rivera*, 308 A.D.2d at 603. Because the Appellate Division's holding was not "contrary to" Supreme Court precedent, the dispositive question is whether it was "objectively unreasonable" for the court to determine that petitioner did not make a prima facie showing of discrimination in the use of peremptory challenges. *See Harris v. Kuhlmann*, 346 F.3d 330, 344 (2d Cir. 2003) (holding that the district court incorrectly conducted its analysis under the "contrary to" prong when it should have conducted the analysis under the "unreasonable application" prong where the correct legal principal was identified by the Appellate Division).

"[W]hen reviewing a *Batson* challenge in the context of a *habeas* petition, a trial court's conclusion that a peremptory challenge was not exercised in a discriminatory manner is entitled to a presumption of correctness, except, *inter alia*, to the extent that the trial court did not resolve the factual issues involved in the challenge or if the finding is not fairly supported by the record." *Galarza v. Keane*, 252 F.3d 630, 635 (2d Cir. 2001). In *Batson*, the Supreme Court set forth a three-part test for a trial court evaluating whether peremptory challenges were exercised in a discriminatory manner: (1) "a trial court must decide whether the party challenging the strike has made a *prima facie* showing that the circumstances give rise to an inference that a member of the *venire* was struck because of his or her race"; (2) "[i]f the party making the *Batson* challenge establishes a *prima facie* case, the trial court must require the non-moving party to proffer a race-neutral explanation for striking the potential juror"; and (3) "if the non-moving party proffers a race-neutral explanation, the trial court must determine whether the moving party has carried his or her burden of proving that the strike was motivated by purposeful discrimination." *Galarza*, 252 F.3d at 635-636 (citing *Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986)). "Throughout the *Batson* procedure, the burden of proving that a strike was exercised on an impermissible discriminatory ground remains with the movant." *Messiah v. Duncan*, No. 04-5311-pr, 2006 U.S. App. LEXIS 8183, at *17 (2d Cir. Jan. 19, 2006).

"Because the [trial] court's determination that the government did not discriminate hinges on its evaluations of the credibility of both potential jurors and the prosecutor, we accord it great deference and will not disturb it absent clear error." *United States v. Hunter*, 86 F.3d 679, 683 (7th Cir. 1996). Here, the trial court properly applied the *Batson* analysis. After defense counsel raised a *Batson* challenge and set forth a *prima facie* case, the court required the prosecutor to proffer her race-neutral reasons for the strikes. As to the six jurors in question, the prosecutor's reasons for the strike involved each juror's demeanor. For example, as to one juror she explained, "he kept holding his head in his hand with the expressions he didn't want to be involved and he here" and, as to three others, she explained that they had their arms crossed during the entire proceeding. (TT at 159-61.)

After hearing defense counsel's response to the prosecutor's race-neutral reasons, the trial court found that the prosecutor's explanation involving the jurors' demeanor were credible. The court held that "taking the entire situation into account, the challenge [was] overruled. It is not an overwhelming situation as far as the prosecution is

concerned. But the evidence is insufficient to rule challenges." (TT at 164.) Here, defense counsel did not argue that the jurors did not in fact demonstrate the demeanor noted by the prosecutor; rather, at most, he recognized he did not know whether they demonstrated the various demeanor and argued that it was not a valid basis for using the strikes. (*Id.* at 161.) However, "[a]n impression of the conduct and demeanor of a prospective juror during the *voire dire* may provide a legitimate basis for the exercise of a peremptory challenge." *Brown v. Kelly*, 973 F.2d 116, 121 (2d Cir. 1992) (finding that a juror's hostile demeanor is a race-neutral reason to use a strike); *see also McCrory v. Henderson*, 82 F.3d 1243, 1247-1248 (2d Cir. 1996) (A peremptory challenge "may legitimately be based not only on answers given by the prospective juror to questions posed on *voir dire*, but also on the prosecutor's observations of the prospective juror."); *United States v. Forbes*, 816 F.2d 1006, 1010 (5th Cir. 1987) (upholding a finding that the prosecutor's reason was race-neutral where the prosecutor explained that the juror had her arms crossed, indicating she was hostile to being in court); *Francis v. Duncan*, 03 Civ. 4959 (DC), 2004 U.S. Dist. LEXIS 16670, at *45 (S.D.N.Y. Aug. 23, 2004) ("[C]ourts in the Second Circuit have found that demeanor and a 'feeling' that a juror is 'not overly forthcoming' in answering questions satisfy the race neutrality requirement of Batson.") (quoting *Moore v. Walker*, No. 99-2754, 2000 U.S. App. LEXIS 29574, at *5 (2d Cir. Nov. 16, 2000) (demanor as acceptable race neutral basis for peremptory challenge)).

Determinations regarding the juror's demeanor, in particular, deserve great deference, as the trial court is in the unique position to observe the demeanor of the juror and to evaluate the credibility of the prosecutor's race-neutral reason. As set forth below, based on a careful review of the record in this case, the state court did not unreasonably apply the *Batson* analysis, and it was not unreasonable for the trial court to credit the prosecutor's race-neutral reasons.

As to the Asian woman, when asked for a race-neutral reason, the prosecutor explained that her reasons for the challenge "ha[d] nothing to do with race" and that it was her prior experience and work that motivated the challenge. (TT at 166.) In immediately responding that the challenge was "not African-American in any event," the trial court indicated it credited the reason given by the prosecutor. (*Id.*) *See Galarza v. Keane*, 252 F.3d 630, 640 n.10 (2d Cir. 2001) (noting that the trial court is not required to give a "talismanic recitation of specific words in order to satisfy Batson" and that a "general crediting of the prosecutor's race-neutral explanations" will typically suffice). Furthermore, petitioner failed to argue at trial that the prosecutor's proffered explanation was pretextual, and, "[i]n order to preserve a *Batson* claim for appellate review, a defendant must object to the prosecutor's use of peremptory challenges as discriminatory *and* either controvert the prosecutor's explanation for the challenged strike, request a hearing, or move for a mistrial." *Kelly v. Greiner,* 97-CV-7535 (JG), 1999 U.S. Dist. LEXIS 1523 (E.D.N.Y. Feb. 11, 1999) (emphasis added)*; see also People v. Bodine*, 283 A.D.2d 979 (N.Y. App. Div. 2001) ("Defendant's contention that the prosecutor's reason was pretextual is unpreserved for our review because defendant failed to articulate to the court any reason why he believed that the prosecutor's explanations were pretextual." (internal quotation marks omitted)). Regardless, petitioner cannot succeed on the merits. The trial court did not unreasonably credit the prosecutor's race-neutral reason. This Court cannot find that it was clear error

7

to deny the *Batson* challenge based on the prosecutor's explanation that the challenge was based on the juror's prior experience and had nothing to do with race.

Finally, the trial court did not improperly return to a *prima facie* analysis, as petitioner alleges, when it observed "that a majority of the jurors who [were] selected" at the time of the *Batson* challenge were African-American. (TT at 163.) The court further noted that there were "a substantial number of African Americans in the panel [and] that if the prosecution was going to charge anybody, it would certainly have to be a substantial number of them." (*Id.*) These observations were not an improper return to a *prima facie* analysis, but rather were factors that the court properly considered with respect to the prosecutor's credibility.

This Court finds that petitioner has failed to meet his burden to demonstrate that the trial court erred in finding the prosecutor exercised challenges for race-neutral reasons, or that the denial of his *Batson* claim in state court involved an unreasonable application of federal law, or an unreasonable application of the facts. Accordingly, petitioner's first claim is denied.

C. Admission of the Lineup Testimony

Pettitioner argues that the trial court improperly permitted testimonial evidence of the victim's out-of-court identification. (Petition at 8.) Specifically, petitioner argued on appeal that this testimony should have been precluded under New York Crim. Proc. Law § 60.25. (Opposition Ex. D, Respondent's Supplemental Brief, at 11.) Pursuant to New York Crim. Proc. Law § 60.25:

(a) The witness who made the pretrial identification must have testified to: (1) observing the defendant "either at the time and place of the commission of the offense or upon some other occasion relevant to the case;" (2) observing, under constitutionally permissible circumstances, "a person whom he recognized as the same person whom he had observed on the first or incriminating occasion;" and (3) being "unable at the proceeding to state, on the basis of present recollection, whether or not the defendant is the person in question."

*People v. Patterson*, 93 N.Y.2d 80, 82 (N.Y. 1999) (quoting New York Crim. Proc. Law § 60.25). Petitioner argues that, because there was no "'testimony' from the complainant establishing an inability to recollect the perpetrator, or a finding from the court in that regard, there should not have been any testimony about the complainant's lineup identification." (Opp. Ex. D, Respondent's Supplemental Brief, at 12.) Rivera's claim is without merit.

As set forth below, petitioner has not demonstrated that the state court unreasonably applied federal law, nor did he demonstrate that the decision resulted in an unreasonable application of the facts, as required under the AEDPA.

As a threshold matter, the alleged erroneous application of Section 60.25 is a matter of state law that is not reviewable by a federal court. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[F]ederal *habeas corpus* relief does not lie for errors of state law.") (citation omitted); *States ex rel. Irons v. Montanye*, 520 F.2d 646, 650 (2d Cir. 1975) (holding that claims that "are matters of state law [are] unreviewable in federal courts"). "The mere

8

fact that the testimony admitted might have been excluded under Section 60.25 is not dispositive of petitioner's right to federal *habeas corpus* relief."[3] *Kennedy v. Fogg*, No. 80 Civ. 1336, 1980 U.S. Dist. LEXIS 12811 (S.D.N.Y. Aug. 5, 1980).

Even assuming *arguendo* that this type of error were cognizable on *habeas* review, there is no basis in the instant case to conclude that there has been an error under state law. On appeal, the Second Department held that "the complainant failed to make an in-court identification of the defendant. Considering the passage of time since the assault, as well as changes in the defendant's appearance, the Supreme Court properly admitted testimony relating to the complainant's identification of the defendant at a lineup conducted the same day as the assault." *Rivera*, 308 A.D.2d at 602 (2d Dep't 2003) (citations omitted).

There was more than ample factual basis to support that holding under state law. The victim made a reliable identification of petitioner the day of the incident and was unable to identify petitioner at trial.[4] Moreover, almost ten months had passed since the time of the incident and at least three different witnesses testified as to petitioner's change in appearance. *See People v. Hernandez*, 154 A.D.2d 197, 201 (2d Dep't 1990) (*"[C]ourts have uniformly identified the lapse of time and change in appearance of the defendant since the prior identification as critical factors in determining whether to admit testimony under CPL 60.25. . . . Reliance upon these factors is particularly warranted where the cause of a witness's inability to make a trial identification is unexplained or the testimony which bears upon this issue is vague, nonparticularized, and conclusory in content.") (collecting cases).

On appeal, petitioner further contended that, because testimony regarding the line-up was allegedly impermissibly admitted, petitioner's counsel was forced to be ineffective by introducing the lineup photos into evidence. To the extent that petitioner is attempting to claim ineffective assistance of counsel, that claim is without merit. As discussed above, admission of the testimony was not improper. Furthermore, counsel was not ineffective in introducing the lineup photographs; rather, counsel made a strategic choice to introduce the photographs in an effort to demonstrate that the lineup was suggestive. (*Id.* at 251-54.) It cannot be said that such a decision fell beyond the objective standard of reasonableness under *Strickland*.[5]

---

[3] In fact, such testimony is admissible in federal courts. "A prior identification is admissible under Fed. R. Evid. 801(d)(1)(C), regardless of whether the witness confirms the identification in court." *United States v. Salameh*, 152 F.3d 88, 125 (2d Cir. 1998) (citing cases). Therefore, it would be a *non sequitur* to hold that an erroneous application of such a state rule provides constitutional relief where a contrary rule is followed, and has been found constitutional, in federal courts.

[4] At trial, the victim was asked several times if he saw either of the two men from the day of the incident in the courtroom. He responded "no" each time. (TT at 200-201.)

[5] Under the two part-test set forth in *Strickland*, "the defendant must prove that counsel's representation fell beyond an objective standard of reasonableness . . . under prevailing professional norm" and that counsel's performance prejudiced her defense such that there is a reasonable likelihood that but for counsel's error, the outcome of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984). Even if the first prong was satisfied, petitioner cannot satisfy the prejudice prong based on the record in this case. The Court finds that petitioner has failed to show that, if the photographs had not been introduced, there is a reasonable likelihood that the outcome of the trial would have been different.

In sum, petitioner has failed to show any error of state evidentiary law, let alone an error of a constitutional magnitude that would warrant *habeas* relief. Accordingly, petitioner's second claim is denied.

### D. Rivera's *Sandoval* Claim

Petitioner claims that "[t]he trial court's pretrial *Sandoval* ruling failed to define the limits of permissible cross-examination into facts of prior convictions" and thus "deprived [him] of the ability to make an informed choice about taking the stand at trial." (Petition at 10.) As set forth below, because petitioner did not testify at trial, this claim is beyond the Court's proper review on a petition for writ of *habeas corpus.*

"It is well settled that a [*habeas*] petitioner's failure to testify [at trial] is fatal to any claims of constitutional deprivation arising out of a *Sandoval* type ruling because, in the absence of such testimony the Court has no adequate non-speculative basis upon which to assess the merits of the claim." *Peterson v. LeFevre,* 753 F. Supp. 518, 521 (S.D.N.Y.), *aff'd mem.*, 940 F.2d 649 (2d Cir. 1991); *see Luce v. United States*, 469 U.S. 38, 43 (1984) ("[T]o raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify.").

"In other words, *habeas* relief is never warranted if the petitioner decided not to testify, regardless of the fact that the trial court's *Sandoval* ruling may have motivated petitioner's decision." *McKenzie v. Poole*, 03-CV-4253 (JG), 2004 U.S. Dist. LEXIS 23598, at *15 (E.D.N.Y. Nov. 23, 2004); *see also Oslan v. Parrott*, 01 Civ. 6551, 2004 U.S. Dist. LEXIS 11681, at *6-7 (S.D.N.Y. June 22, 2004) ("Petitioner chose not to testify at trial. Therefore, petitioner's claim based on the trial court's *Sandoval* ruling does not raise a constitutional issue cognizable on *habeas corpus* review."); *Delgado v. Duncan*, No. 02 Civ. 4929, 2003 U.S. Dist. LEXIS 24123, at *12 (E.D.N.Y. Nov. 13, 2003) ("Because petitioner did not testify at trial, this claim [regarding the *Sandoval* ruling] is not cognizable on *habeas* review.").

Here, petitioner elected not to testify at trial and, thus, his *Sandoval* claim cannot provide a basis for *habeas* relief.[6] Accordingly, petitioner's third claim is denied.

---

[6] Although petitioner argues that the trial court's *Sandoval* ruling was in fact a non-ruling because it was ambiguous as to the precise parameters of cross-examination on the facts underlying the convictions, that argument is without merit. The court advised the petitioner that impeachment on the prior convictions would be permitted, including an inquiry regarding the underlying facts, and gave petitioner sufficient notice to make a decision regarding whether to testify. In any event, as noted above, petitioner needed to take the stand and testify to preserve a *habeas* challenge to any ambiguity in that ruling. Because petitioner failed to do that, the claim is not cognizable on *habeas* review.

10

### III. CONCLUSION

Petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Accordingly, the instant *habeas* petition is DENIED. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2).

The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 25, 2006
Brooklyn, NY

\* \* \*

The petitioner, Ralph Rivera, appeared *pro se*. The attorney for the respondent is Diane R. Eisner, Esq., Assistant District Attorney, Richard Brown, Esq., District Attorney Kings County, 350 Jay Street, Brooklyn, New York, 11201.